[No. B206714. Second Dist., Div. Three. Aug. 4, 2008.]

ANGLO IRISH BANK CORPORATION, PLC et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAL BRAR et al., Real Parties in Interest.

[No. B206715. Second Dist., Div. Three. Aug. 4, 2008.]

STEWART DAVIES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAL BRAR et al., Real Parties in Interest.

**COUNSEL**

Holland & Knight, Richard T. Williams and D. Casey Flaherty for Petitioners.

No appearance for Respondent.

Goldfarb, Sturman & Averbach, Steven L. Feldman, Steven L. Crane and Jennifer Burcio for Real Parties in Interest.

## OPINION

**CROSKEY, Acting P. J.**—In these consolidated writ proceedings, several nonresident defendants challenge the denial of their motions to quash service of summons based on lack of personal jurisdiction.[1] They contend their contacts with the State of California are insufficient to justify the exercise of personal jurisdiction in this state. They also contend the trial court applied an improper standard of proof and erred in finding that two individual defendants made false representations to plaintiffs at a meeting in California. We reject these arguments.

We conclude that by soliciting investors in California through the personal visits of their employees and others, Petitioners established sufficient contacts with California to justify the exercise of specific personal jurisdiction in this state. We further conclude that activities that are undertaken on behalf of a defendant may be attributed to the defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities at the forum state, regardless of the specific requirements of alter ego or agency, and that state law of alter ego and agency does not determine the constitutional limits to the exercise of specific personal jurisdiction. The denial of the motions to quash was proper.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*[2]

The Irish bank is incorporated in and has its principal place of business in Ireland. The Isle of Man bank and the trust company are incorporated in and have their principal places of business in Isle of Man, and are subsidiaries of the Irish bank. Davies is a citizen and resident of the United Kingdom. Davies became managing director of the trust company in December 1999 and became a director of the Isle of Man bank in October 2000.[3] Connolly is a citizen and resident of Ireland. Connolly preceded Davies as managing director of the trust company and was a director of the trust company from December 1999 to October 2000. Connolly was a director of the Isle of Man bank from January 1999, or earlier, to December 2000 and was a senior manager for the Irish bank from October 2000 to June 2001.

---

[1] The petitioners are Anglo Irish Bank Corporation, PLC (the Irish bank), Anglo Irish Bank Corporation (I.O.M.) P.L.C. (the Isle of Man bank), Anglo Irish Trust Company Limited (the trust company), Stewart Davies, and Enda Connolly (collectively Petitioners).

[2] The material facts are undisputed, except as noted.

[3] A managing director is the equivalent of a chief executive officer.

The Irish bank, the Isle of Man bank, and the trust company sought investors who would borrow funds from the Isle of Man bank to purchase investments known as "with profit bonds" to be held in trust by the trust company. The Irish bank would review and approve the investors' applications for credit. Davies visited California to meet with individuals who might be interested in such a leveraged investment. At the request of the Irish bank, Connolly accompanied Davies on the visit. The primary purpose of their meetings with potential investors was to determine whether the potential investors were suitable investors. Part of their responsibility in that connection was to satisfy Isle of Man's "know your customer" anti-money-laundering requirements by determining that the funds were from legitimate sources.

Davies and Connolly jointly met with 10 or 11 potential clients in California in March 2000, nine or 10 of whom decided to invest through the trust company. Their business cards handed out at the meetings bore a logo for "Anglo Irish Bank." Davies's card identified him as managing director of the trust company. Connolly's card identified him as "Head of Offshore Trust Operations" for the Irish bank.[4] Mike McGee, who was then managing director of the Isle of Man bank, also met with several potential investors in California a few months later.

Kal Brar and Imelda Brar are California residents. They are cotrustees of the Satnam Trust. They met with investment advisers in late 1999 who encouraged them to invest abroad in "with profit bonds" and to leverage their investments. The Brars caused more than $4 million from the Satnam Trust to be transferred to the Kivrar Trust, a trust organized under the laws of Isle of Man, for the purpose of investing abroad in "with profit bonds." More than $3.3 million of the funds held by the Kivrar Trust was so invested as of early 2000. The investment advisers then arranged for a meeting to take place at the Brars' home in California to discuss the potential leveraging of their investments.

Accordingly, the Brars met with Davies and Connolly at the Brars' home in California in March 2000. The Brars' attorney, Robert Klueger, and two investment advisers, Stanley Chesed of PrimeGlobal and Andrew Peat, also

---

[4] Connolly testified in his deposition that he used that title to distinguish himself from Davies, with whom he was working closely while Davies learned his new job as managing director of the trust company. Connolly testified that he did not "have any title" with the Irish bank at the time and that he did not understand why the card stated that he did. He acknowledged, however, that he visited California to meet with potential investors at the specific request of the Irish bank.

were present at the meeting. The meeting included discussions of the Brars' background, the source of their wealth, and leveraging "with profit bonds." After the meeting, the leveraging was approved and put in motion. The trust company was appointed trustee of the Kivrar Trust in June 2000, a new trust called Kivrar Trust II was created, and Kivrar Trust II borrowed funds in order to purchase additional "with profit bonds."

Davies visited California again in November 2000 to attend conferences in Los Angeles and San Francisco on the subject of asset protection. The conferences were sponsored by PrimeGlobal and included presentations on leveraging "with profit bonds." Davies visited California again in May 2001 to meet with investment advisers and at least one potential investor regarding leveraged "with profit bonds."[5]

The Brars' investments eventually suffered substantial losses. The Brars estimated that as of December 2007 they had lost approximately $2 million of their initial investment.

### 2. Trial Court Proceedings

The Brars individually and Imelda Brar as a trustee of the Satnam Trust filed a complaint against Petitioners and others in May 2005. Their first amended complaint filed in July 2005 alleges that based on the advice of their investment advisers, the Brars caused over $4 million held by Satnam Trust to be invested abroad in "with profit bonds." They allege that the investments were made through Kivrar Trust and other intermediaries. They allege that their investment advisers represented that the investments were unique and that their principal was "absolutely guaranteed" as long as they did not withdraw the money for five years. They allege that defendants, including Petitioners, conspired to deceive and defraud them. The Brars allege counts against all defendants for (1) intentional misrepresentation, (2) fraudulent concealment, (3) securities fraud (Corp. Code, § 25401), (4) breach of fiduciary duty, (5) negligent misrepresentation, and (6) an accounting.

---

[5] Davies declared that he met with only investment advisers and representatives of trust companies during his visit to California in May 2001 and solicited no business for the trust company on that visit. The Brars, however, presented a declaration by Francis Good describing his meeting with Davies and others in California in May 2001 to discuss potential leveraged investments in "with profit bonds," and a memorandum by Davies describing the meeting. The trial court resolved the conflict in the evidence by finding that the meeting had occurred. Substantial evidence supports that finding.

Petitioners moved to quash service of summons based on lack of personal jurisdiction. The trial court determined that Petitioners each had sufficient contacts with the State of California to be subject to specific personal jurisdiction and denied the motions. The court stated that the operations of the Irish bank, the Isle of Man bank, and the trust company were "integrated" with respect to the leveraged with profit bonds investments and that personal jurisdiction over the Irish bank could be based on "the agency and/or representative services basis."

The Irish bank, the Isle of Man bank, the trust company, Davies, and Connolly filed two separate petitions for writ of mandate in this court, challenging the denial of their motions to quash. We consolidated the two writ proceedings, stayed the trial court proceedings, and issued an order to show cause.

## CONTENTIONS

Petitioners contend (1) they have insufficient contacts with California to justify the exercise of personal jurisdiction in this state; and (2) the trial court applied an improper standard of proof and erred in finding that Davies and Connolly made false representations to the Brars.

## DISCUSSION

### 1. *Constitutional Limits on the Exercise of Personal Jurisdiction*

■ A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. (Code Civ. Proc., § 410.10.) The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient "minimum contacts" with the state so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154] (*Internat. Shoe*); accord, *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 [127 Cal.Rptr.2d 329, 58 P.3d 2] (*Pavlovich*).) In other words, the defendant's contacts with the forum state must be such that the defendant had " 'fair warning' " that its activities might subject it to personal jurisdiction in the state. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 [85 L.Ed.2d 528, 105 S.Ct. 2174] (*Burger King*); accord, *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297 [62 L.Ed.2d 490, 100 S.Ct. 559].)

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' [Citations.]" (*Calder v. Jones* (1984) 465 U.S. 783, 788 [79 L.Ed.2d 804, 104 S.Ct. 1482].) "Each defendant's contacts with the forum State must be assessed individually." (*Id.* at p. 790.) " 'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 115 [94 L.Ed.2d 92, 107 S.Ct. 1026] (*Asahi*).)

■ A defendant that has substantial, continuous, and systematic contacts with the forum state is subject to general jurisdiction in the state, meaning jurisdiction on any cause of action. (*Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445–446 [96 L.Ed. 485, 72 S.Ct. 413]; see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).) The Brars do not contend Petitioners are subject to general jurisdiction. Instead, they contend and the court found that Petitioners are subject to specific jurisdiction, meaning jurisdiction in an action arising out of or related to the defendant's contacts with the forum state. (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414, fn. 8 [80 L.Ed.2d 404, 104 S.Ct. 1868]; *Vons, supra*, 14 Cal.4th at p. 446.) Specific jurisdiction depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged. (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147–148 [127 Cal.Rptr. 352, 545 P.2d 264].)

"A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citation]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citation]." (*Pavlovich, supra*, 29 Cal.4th at p. 269.) " 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum. [Citation.]" (*Ibid.*)

"[P]urposeful availment occurs where a nonresident defendant ' "purposefully direct[s]" [its] activities at residents of the forum' (*Burger King, supra*, 471 U.S. at p. 472), ' "purposefully derive[s] benefit" from' its activities in the forum (*id.* at p. 473), 'create[s] a "substantial connection" with the forum' (*id.* at p. 475), ' "deliberately" has engaged in significant activities within' the forum (*id.* at pp. 475–476), or 'has created "continuing obligations" between

[itself] and residents of the forum' (*id.* at p. 476). By limiting the scope of a forum's jurisdiction in this manner, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . .' (*Id.* at p. 475.) Instead, the defendant will only be subject to personal jurisdiction if ' "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." ' (*Pavlovich*, at p. 269, quoting *World-Wide Volkswagen, supra*, 444 U.S. at p. 297.)" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1063 [29 Cal.Rptr.3d 33, 112 P.3d 28] (*Snowney*).)

■ A controversy is related to or arises out of the defendant's forum contacts, so as to satisfy the second requirement for the exercise of specific personal jurisdiction, if there is "a *substantial connection* between the forum contacts and the plaintiff's claim." (*Vons, supra*, 14 Cal.4th at p. 452.) The forum contacts need not be the proximate cause or "but for" cause of the alleged injuries. (*Id.* at pp. 462–467.) The forum contacts also need not be "substantively related" to the cause of action, meaning those contacts need not establish or support an element of the cause of action. (*Id.* at pp. 469–475.) "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." (*Id.* at p. 452.) Accordingly, in evaluating the quality and nature of the defendant's forum contacts, we consider not only the conduct directly affecting the plaintiff, but also the broader course of conduct of which it is a part. (*Cornelison v. Chaney, supra*, 16 Cal.3d at p. 149.)

■ In determining whether the exercise of jurisdiction would be fair and reasonable, so as to satisfy the third requirement for the exercise of specific personal jurisdiction, a court must consider (1) the burden on the defendant of defending an action in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining relief, (4) " 'the interstate [or international] judicial system's interest in obtaining the most efficient resolution of controversies,' " and (5) the states' or nations' shared interest " 'in furthering fundamental substantive social policies.' " (*Asahi, supra*, 480 U.S. at p. 113; see *id.* at p. 115.) "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. [Citations.] On the

other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[6] (*Burger King, supra,* 471 U.S. at p. 477.)

■ The commission of a tortious act within the forum state ordinarily justifies the exercise of specific personal jurisdiction in an action arising from the tortious act. (*Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 535–536 [257 Cal.Rptr. 278]; *Kaiser Aetna v. Deal* (1978) 86 Cal.App.3d 896, 901 [150 Cal.Rptr. 615]; see Rest.2d Conflict of Laws, § 36, subd. (1).)

### 2. *Standard of Review*

A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to prove, by a preponderance of the evidence, facts establishing purposeful availment and a substantial connection between the defendant's forum contacts and the plaintiff's claim. (*Snowney, supra,* 35 Cal.4th at p. 1062; *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090–1091 [128 Cal.Rptr.2d 683].) If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable, that is, would not "comport with 'fair play and substantial justice' " (*Burger King, supra,* 471 U.S. at p. 476; see *Snowney, supra,* at p. 1062; *Vons, supra,* 14 Cal.4th at p. 449). If there is no conflict in the evidence, the question whether a defendant's contacts with California are sufficient to justify the exercise of personal jurisdiction in this state is a question of law that we review de novo. (*Snowney, supra,* at p. 1062.) If there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings under the substantial evidence standard. (*Vons, supra,* 14 Cal.4th at p. 449.) Although the parties here dispute their opponents' characterization of the facts, there is no material conflict in the evidence itself, so our review is de novo.[7] (*Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204 [252 Cal.Rptr. 363].)

---

[6] *Burger King, supra,* 471 U.S. at pages 477–478, stated further: "For example, the potential clash of the forum's law with the 'fundamental substantive social policies' of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue. Nevertheless, minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. [Citations.] As we previously have noted, jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent. [Citations.]" (Fns. omitted.)

[7] The only notable exception is the conflicting evidence concerning Davies's visit to California in May 2001. (See fn. 5, *ante.*)

### 3. *Petitioners Purposely Availed Themselves of Forum Benefits*

The Irish bank, the Isle of Man bank, and the trust company worked closely together in connection with the leveraged investments. The Irish bank reviewed and approved credit applications on behalf of the Isle of Man bank, which made the loans, and the trust company served as trustee of the trusts holding the "with profit bonds" that were purchased using the loan proceeds. Davies, Connolly, and McGee visited California for the purpose of meeting with suitable investors who would be willing to invest in leveraged "with profit bonds" and whose investment funds were from legitimate sources. Davies was managing director of the trust company at the time of his first visit to California and was a director of the Isle of Man bank at the time of his later visits to this state. Connolly was employed by the trust company at the time of his visit to California and was also a director of the Isle of Man bank at that time. McGee was managing director of the Isle of Man bank at the time of his visit to this state. Although Connolly was not an employee of the Irish bank at the time, he visited California at the request of the Irish bank and in furtherance of the common interests of the three entities.

The business cards handed out by Davies and Connolly exemplified the close relationship among the three entities for purposes of the leveraged investments. Davies's card bore an Anglo Irish Bank logo yet identified him as managing director of the trust company. Connolly's card bore the same logo and identified him as "Head of Offshore Trust Operations" for the Irish bank, although he was not formally employed by the Irish bank at the time.

A corporation or other business entity acts through authorized individuals, and the activities of its employees are attributed to the business entity for purposes of personal jurisdiction. (*Internat. Shoe, supra*, 326 U.S. at pp. 316–317, 320.) An individual's status as an employee acting on behalf of his or her employer does not insulate the individual from personal jurisdiction based on his or her forum contacts. (*Calder v. Jones, supra*, 465 U.S. at p. 790; *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 115–118 [265 Cal.Rptr. 672] [rejected the "fiduciary shield" doctrine]; but see *Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 713–716 [215 Cal.Rptr. 442] [dictum].) Apart from an employment relationship, activities that are undertaken on behalf of a defendant may be attributed to that defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities toward the forum state. (See *Burger King, supra*, 471 U.S. at p. 479,

fn. 22;[8] *Empire Steel Corp. v. Superior Court* (1961) 56 Cal.2d 823, 835 [17 Cal.Rptr. 150, 366 P.2d 502] (*Empire Steel*).)

■ *Empire Steel* held that specific personal jurisdiction over a foreign parent corporation was established based on the parent's "manipulation" and control of its California subsidiary to the detriment of the subsidiary's creditors. (*Empire Steel, supra*, 56 Cal.2d at p. 831.) The plaintiff sought to recover damages caused by the subsidiary's failure to take delivery of steel purchased from the plaintiff. (*Id.* at p. 826.) *Empire Steel* concluded that the evidence supported the inference that "Empire knowingly caused its California subsidiary to make the contracts in suit while [the subsidiary] was in fact insolvent but had the appearance of financial responsibility." (*Id.* at p. 832.) The California Supreme Court stated that the court need not decide whether the parent was the alter ego of its subsidiary, and that " '[t]he essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee *or in any other manner.*' [Citations.]"[9] (*Empire Steel*, at p. 835.) Thus, a parent corporation's purposefully causing its subsidiary to engage in forum contacts may constitute purposeful availment by the parent even if the separateness of the corporations is maintained and alter ego is not established.[10] (*Empire Steel*, at p. 835; *Northern Natural Gas Co. v. Superior Court* (1976) 64 Cal.App.3d 983, 994–995 [134 Cal.Rptr. 850]; Rest.2d Conflict of Laws, § 52, com. b, p. 180.[11])

---

[8] *Burger King* stated in dicta: "We have previously noted that when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, *International Shoe Co. v. Washington*, [*supra*,] 326 U.S. 310, 320 . . . , at least where he is a 'primary participan[t]' in the enterprise and has acted purposefully in directing those activities, *Calder v. Jones*, [*supra*,] 465 U.S., at p. 790." (*Burger King, supra*, 471 U.S. at p. 479, fn. 22.)

[9] The exercise of personal jurisdiction formerly depended on the defendant's "presence" within the forum state. *Internat. Shoe* held that a corporation was "present" within the state if its contacts with the state were sufficient to make the exercise of personal jurisdiction fair and reasonable, and thus shifted the focus from "presence" to "minimum contacts." (*Internat. Shoe, supra*, 326 U.S. at pp. 316–317; see *Shaffer v. Heitner* (1977) 433 U.S. 186, 203–204 [53 L.Ed.2d 683, 97 S.Ct. 2569].)

[10] We do not regard the use of the word "manipulation" in *Empire Steel, supra*, 56 Cal.2d at page 831, as intended to strictly limit the circumstances in which purposeful availment may be found when a parent corporation causes its subsidiary to engage in forum contacts on its behalf. Instead, we believe that "manipulation" of a subsidiary is only one example of a parent corporation's purposefully directing the activities of its subsidiary in the forum state.

[11] The Restatement Second of Conflict of Laws, section 52, comment b, page 180 states, in relevant part: "If the subsidiary corporation does an act, or causes effects, in the state at the direction of the parent corporation or in the course of the parent corporation's business, the state has judicial jurisdiction over the parent to the same extent that it would have had such jurisdiction if the parent had itself done the act or caused the effects."

■ In our view, reliance on state substantive law of agency and alter ego to determine the constitutional limits of specific personal jurisdiction is unnecessary and is an imprecise substitute for the appropriate jurisdictional question. The proper jurisdictional question is not whether the defendant can be liable for the acts of another person or entity under state substantive law, but whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts. That constitutional question does not turn on the specific state law requirements of alter ego or agency, although the inquiry may be similar in some circumstances.[12] (See Hoffman, *The Case Against Vicarious Jurisdiction* (2004) 152 U.Pa. L.Rev. 1023, 1026–1027, 1086–1090, 1097–1098; Note, *Agency as a Means of Obtaining Jurisdiction in New York Over Foreign Corporations: A Failed Theory* (1993) 20 Brook. J. Int'l L. 169, 196-202; Comment, *Jurisdiction Over a Corporation Based on the Contacts of a Related Corporation: Time for a Rule of Attribution* (1988) 92 Dick. L.Rev. 917, 925-944;[13] cf. *Vons, supra,* 14 Cal.4th at pp. 464, 475;[14] but see *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 244–246 [121 Cal.Rptr.2d 1] [stated that principles of alter ego and agency can establish a basis for specific personal jurisdiction and remanded those issues for the trial court to decide]; *Magnecomp Corp. v. Athene Co., supra,* 209 Cal.App.3d at pp. 535–539 [applied state law of agency in finding specific personal jurisdiction over a foreign corporation]; *Northern Natural Gas Co. v. Superior Court, supra,* 64 Cal.App.3d at pp. 992–995 [same]; *Vons, supra,* 14 Cal.4th at p. 459, fn. 7 [stated in dictum, "corporate veils may be pierced and agents' activities may be considered in appropriate cases"]; Brilmayer & Paisley,

---

[12] Opinions applying principles of "alter ego" and "agency," including the "representative services" doctrine, to determine the existence of general, rather than specific, personal jurisdiction are distinguishable. (See, e.g., *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 119–121 [37 Cal.Rptr.3d 258]; *F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 796–799 [30 Cal.Rptr.3d 407]; *DVI, Inc. v. Superior Court, supra,* 104 Cal.App.4th at pp. 1093–1094; *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 537–543 [99 Cal.Rptr.2d 824].)

[13] The cited articles discuss the inexact fit between rules of law designed to establish liability for the acts of another and an assessment of the defendant's contacts with the forum for purposes of establishing general or specific personal jurisdiction. The articles also discuss the efforts of some courts applying principles of alter ego and agency to reformulate the inquiry so as to address the appropriate jurisdictional question.

[14] *Vons, supra,* 14 Cal.4th 434, rejected reliance on tort law causation doctrines to determine whether a controversy is sufficiently related to the defendant's forum contacts so as to justify the exercise of specific personal jurisdiction. *Vons* stated, "one must question the utility of importing a causation test from tort law to measure a matter that is fundamentally one of relationship and fairness rather than causation . . . ." (*Id.* at p. 475.) Similarly here, we question the utility of relying on principles of vicarious liability to measure a matter that is fundamentally one of relationship and fairness rather than vicarious liability.

*Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency* (1986) 74 Cal. L.Rev. 1.)

 Davies, Connolly, and McGee visited California for the purpose of engaging in economic activity with California residents. Contrary to Petitioners' argument that they only sought to satisfy Isle of Man's "know your customer" requirements, the purpose of satisfying those requirements was to make the leveraged investments possible. They discussed leveraging "with profit bonds" with the Brars and other potential investors during the visit by Davies and Connolly in March 2000, McGee's visit a few months later, and Davies's visit in May 2001. Through those visits, they succeeded in garnering millions of dollars in investments from California residents.

The evidence supports the conclusion that in doing so, the individuals acted not only on behalf of their employers, the Isle of Man bank and the trust company, but also on behalf of the Irish bank. Connolly testified in his deposition that he visited California to meet with potential investors at the specific request of the Irish bank, which relied on his experience and expertise both in evaluating the prospective clients and in answering any questions regarding the leveraged investments. Moreover, Connolly's business card identifying him as "Head of Offshore Trust Operations" for the Irish bank and the need to obtain approval from the Irish bank to make the loans are further evidence that Connolly in particular was acting on behalf of the Irish bank as well as the other entities.

Accordingly, we conclude that the Irish bank, the Isle of Man bank, and the trust company purposefully directed their activities at California residents by and through the individuals who visited California on their behalf. We conclude further that Petitioners, and each of them, purposefully derived benefit from their activities in California and deliberately engaged in significant activities within this state, and that they therefore purposefully availed themselves of forum benefits.[15]

---

[15] Petitioners attempt to distinguish between the trust company "individually" and the trust company "as trustee," and argue that the trust company "as trustee" had no contacts with California. The trust company is a single defendant and either is subject to personal jurisdiction or is not. A defendant is subject to specific personal jurisdiction in California if the defendant purposefully availed itself of forum benefits, the controversy is related to or arises out of the defendant's forum contacts, and the exercise of jurisdiction would be fair and reasonable, as we have stated. The fact that the trust company was appointed as trustee of the investment trusts after Davies and Connolly visited California in March 2000 is irrelevant if the trust company purposefully directed its activities at this state, as we conclude, and if the other two requirements for the exercise of specific personal jurisdiction are satisfied.

### 4. *The Dispute Is Substantially Connected to Petitioners' California Activities*

The second requirement for specific personal jurisdiction is that there must be a substantial connection between the dispute and the defendant's forum activities. (*Snowney, supra*, 35 Cal.4th at pp. 1062, 1068.) Plaintiffs' six counts for intentional misrepresentation, fraudulent concealment, securities fraud, breach of fiduciary duty, negligent misrepresentation, and an accounting all are based on alleged misrepresentations in or omissions from statements made to them in California by Davies, Connolly, and others in an effort to solicit business from California residents. Because the alleged harm relates directly to Petitioners' activities in California, we conclude that there is a substantial connection between the dispute and Petitioners' forum activities. (*Id.* at p. 1069.) "By purposefully and successfully soliciting the business of California residents, defendants could reasonably anticipate being subject to litigation in California in the event their solicitations caused an injury to a California resident. (See *Burger King, supra*, 471 U.S. at pp. 475–476.)" (*Ibid.*)

### 5. *The Exercise of Personal Jurisdiction Would Be Fair and Reasonable*

The third requirement for specific personal jurisdiction is that the exercise of jurisdiction must be fair and reasonable. (*Snowney, supra*, 35 Cal.4th at pp. 1062, 1070.) Petitioners argue that after creating offshore trusts for the apparent purpose of removing assets from the jurisdiction of California courts, plaintiffs should not be allowed to sue foreign defendants in California courts "just because their investment did not prove as fruitful as they had hoped." We conclude that by investing in foreign trusts, plaintiffs did not waive the right to sue Petitioners in a California court to seek redress for injuries related to or arising out of Petitioners' California activities. Moreover, plaintiffs do not allege only that the investments were unsuccessful, but that Petitioners made material misrepresentations and omissions in California in connection with the investments.

Petitioners also argue that it would be an extreme burden for them to have to defend this action in California. Contrary to Petitioners' contention, the denial of the motions to quash was not based on a finding that Davies and Connolly made false representations at the meeting, and the trial court made no such finding. Accordingly, Petitioners have shown no error in this regard.

## *DISPOSITION*

The petitions are denied. The order to show cause is discharged, and the stay of trial court proceedings previously issued is lifted. The Brars are entitled to recover their costs in these consolidated appellate proceedings.

Kitching, J., and Aldrich, J., concurred.