Filed 12/2/13  Pacific Corp. Group Holdings v. Morris CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PACIFIC CORPORATE GROUP HOLDINGS, LLC, | D062384 |
| Cross-complainant and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00084760-CU-BC-CTL) |
| HENRY MORRIS et al., | |
| Cross-defendants and Respondents. | |

APPEALS from orders of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Pettit Kohn Ingrassia & Lutz, Douglas A. Pettit and Jenna H. Leyton-Jones for Cross-complainant and Appellant.

Procopio, Cory, Hargreaves & Savitch and J. Christopher Jaczko for Cross-defendant and Respondent Morris.

Jay Willie Henderson; Law Offices of Jay Freedman and Jay Brett Freedman for Cross-defendant and Respondent Loglisci.

Wingert, Grebing, Brubaker & Juskie, Alan K. Brubaker; Schulte Roth & Zabel, and Martin L. Perschetz for Cross-defendants and Respondents Hall and The Clinton Group.

## I.

## INTRODUCTION

In this case, we consider whether the trial court properly determined that it lacked personal jurisdiction over four cross-defendants, Henry Morris, George Hall, The Clinton Group, and David Loglisci (collectively respondents), with respect to several tort claims brought against them by appellant Pacific Corporate Group Holdings, LLC (PCGH). We conclude that the trial court properly determined that it lacked personal jurisdiction over respondents. Accordingly, we affirm the court's orders granting respondents' motions to quash for lack of personal jurisdiction.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *PCGH's first amended cross-complaint*

PCGH is a limited liability company specializing in advising institutional investors with respect to private equity investments. After PCGH's former member, Stephen Moseley, filed a lawsuit against it, PCGH filed a first amended cross-complaint against Moseley alleging five tort causes of action, including civil violations of the Racketeer

Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c)), breach of fiduciary duty, fraud, intentional interference with economic relations, and unfair competition.[1]

All of PCGH's claims are based on Moseley's alleged acts while a member of PCGH that had the effect of involving PCGH in an "Illegal Kickback Scheme" designed to defraud the New York State Common Retirement Fund (NYSCRF). According to PCGH, Moseley engaged in an illegal conspiracy with Morris[2] and with Loglisci, the former chief investment officer of the NYSCRF, among others, without PCGH's knowledge. PCGH claims that the conspiracy involved providing Morris with a secret five percent interest in an entity called Strategic Co-Investment Partners, L.P. (SCIP), a joint venture that PCGH was forming in order to make private equity investments for NYSCRF, in exchange for providing additional funding from NYSCRF. According to PCGH, the purpose of the scheme was to enrich certain members of the conspiracy, including Loglisci and Morris. PCGH alleged that Moseley was told about the plan to include Morris as a secret participant in the joint venture at a meeting in Napa, California (Napa Meeting). PCGH further claimed that Moseley concealed his knowledge of the "Illegal Kickback Scheme" from PCGH. According to PCGH, the New York Attorney General's office conducted an investigation into the scheme, and, as a result of this

---

[1]    PCGH also filed a breach of contract cause of action against Moseley based on his alleged failure to abide by an agreement to attempt to settle certain disputes by mediation or arbitration. The breach of contract cause of action is not relevant to this appeal.

[2]    Although PCGH does not identify Morris by title in its cross-complaint, in its oppositions to the motions to quash, PCGH asserted that Morris was a political advisor to the New York State Comptroller.

investigation, PCGH suffered significant damages, including having to pay $2.1 million in restitution to the NYSCRF. PCGH later amended its cross-complaint to name Loglisci, Morris, Hall, and The Clinton Group[3] as Roe defendants.[4]

B.    *The motions to quash*

Respondents filed motions to quash for lack of personal jurisdiction.[5]  In their brief in support of their joint motion, Hall and The Clinton Group noted that Hall is a resident of New York and New Jersey, and is the chief executive officer of The Clinton Group, a Delaware corporation having its principal place of business in New York.

Hall and The Clinton Group acknowledged that Estes Capital, L.P. (Estes Capital), an entity established by Hall, and affiliated with The Clinton Group, was a partner in a joint venture with PCGH, related to SCIP.  However, Hall and The Clinton Group maintained that the SCIP transaction did not provide a sufficient basis for the trial court's exercise of personal jurisdiction over either of them.[6]  Hall and The Clinton Group

---

[3]    Although not alleged in the amended cross-complaint, it is undisputed that Hall signed two agreements related to the SCIP transaction and that Hall is the chief executive officer of The Clinton Group.

[4]    It appears to be undisputed that through these amendments, PCGH sought to assert each of the five tort causes of action in the first amended cross-complaint against respondents.

[5]    Hall and The Clinton Group filed a joint motion to quash.  Loglisci and Morris filed additional separate motions to quash.

[6]    Specifically, Hall and The Clinton Group stated, "Mr. Hall formed an entity known as [Estes Capital] which together with [PCGH] and a third entity known as W.

argued, "[A]part from [PCGH's] allegation regarding the Napa [M]eeting, none of the . . . activity [alleged in the first amended cross-complaint] . . . has anything to do with California." Hall and The Clinton Group further argued that there were no "allegation[s] as to what Mr. Hall said, was told, overheard or knew during [the Napa Meeting]."

In their briefs in support of their motions to quash, Morris and Loglisci argued that they are nonresidents of California. Loglisci filed a brief that "mirror[ed] the . . . filing of [Hall and The Clinton Group]," in which he argued that the first amended cross-complaint's allegations related to the SCIP transaction were insufficient to establish personal jurisdiction over him in California. Loglisci also argued that he had not attended the Napa Meeting, which he contended was the only allegation from the first amended cross-complaint that involved California. Morris maintained that he had never communicated or spoken with Moseley, that he had never communicated with PCGH, and that "PCGH's allegations of a conspiracy cannot serve as the basis for imputing upon Morris whatever forum related contacts others may have had."

PCGH filed oppositions to the motions to quash in which it contended that the trial court had specific personal jurisdiction[7] over respondents. PCGH argued that Hall,

---

Investment, LLC formed a joint venture called Strategic Co-Investment Partners GP, L.P. . . . , which served as the general partner of [Strategic Co-Investment Partners L.P.]."

[7]    "*Specific* jurisdiction results when the defendant's contacts with the forum state, though not enough to subject the defendant to the *general* jurisdiction of the forum, are sufficient to subject the defendant to suit in the forum on a cause of action related to or arising out of those contacts." (*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 238 (*Virtualmagic Asia, Inc.*), italics added.)

5

Moseley, and a person named Barrett Wissman had attended the Napa Meeting, during which the alleged "Illegal Kickback Scheme" was planned. PCGH contended that Wissman had acted as Morris's and Loglisci's agent, and that Wissman's actions could therefore be attributed to Morris and Loglisci for purposes of determining the jurisdictional issues before the court. PCGH further argued that after the Napa Meeting, Hall and Wissman engaged in e-mail communications with Moseley negotiating the terms of the SCIP transaction, and that Hall and Loglisci had later signed agreements related to the transaction. PCGH maintained that these activities supported the court's exercise of personal jurisdiction over respondents. In the alternative, PCGH requested that the trial court continue the hearings on the motions to quash to permit PCGH to conduct additional discovery concerning the jurisdictional issues in question.[8]

After receiving reply briefs from Morris as well as from Hall and The Clinton Group, the trial court issued tentative rulings denying PCGH's request to continue the hearings and granting the motions to quash. The following day, the trial court held a hearing on the motions to quash, confirmed its tentative rulings, and entered minute orders granting the motions.

In its order granting Hall and The Clinton Group's motion, the court reasoned in part:

---

[8]     PCGH supported its oppositions with various documents, including excerpts of Wissman's and Moseley's depositions, e-mails from Moseley and Wissman related to the SCIP transaction, a declaration from PCGH's chief executive officer, and two agreements related to the SCIP transaction.

6

"[T]here is no evidence that Hall was advised of the 5% agreement at the Napa [M]eeting. Even assuming that Hall participated in the alleged Napa [M]eeting and that Hall had knowledge of Morris' involvement, such evidence does not establish that Hall and [The] Clinton Group 'purposefully availed' themselves of forum benefits in California . . . . As pled, and considering the evidence before the court, the alleged 'Illegal Kickback Scheme' was designed to harm the NYSCRF and to benefit Morris. Neither the NYSCRF nor Morris are California residents. In particular[,] the complaint specifically alleges that the purpose of the alleged 'conspiracy' 'was to enrich the Morris Group by requiring some investment managers to make payments to the Morris Group as a condition of doing business with NYSCRF' [citation]. There is no allegation or evidence of any intent to harm California resident PCGH. Under these circumstances, the Court finds the harm allegedly suffered by PCGH by virtue of the fine paid, attorney's fees paid, and alleged loss of business, is too attenuated to confer jurisdiction over Hall and [The] Clinton Group in California."

In its orders granting Loglisci's and Morris's motion to quash, the trial court employed similar reasoning. The court also expressly found that PCGH failed to establish that Wissman was acting as either Loglisci's or Morris's agent so as to establish jurisdiction over Loglisci or Morris based on Wissman's actions in California.

C.    *PCGH's appeals*

PCGH appeals from the trial court's orders granting the motions to quash. PCGH contends that the trial court erred in granting the motions to quash[9] and in denying its requests for a continuance of the hearings to allow it to conduct additional discovery.

---

9    As discussed in greater detail in parts III.A.3.a.ii. and III.A.3.b.iii., *post*, although the trial court made a number of factual findings relevant to its determination of whether it could exercise personal jurisdiction over respondents, PCGH raises no challenges to the court's factual findings in this appeal, including those findings that undermine PCGH's contentions on appeal.

III.

DISCUSSION

A.      *The trial court did not err in granting respondents' motions to quash*

1.      *Burdens of proof and standards of review*

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.  [Citation.]  Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.  [Citation.]  When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence.  [Citation.]  When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record."  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

2.      *General principles of personal jurisdiction*

"California's courts may exercise personal jurisdiction over a nonresident defendant on any basis not inconsistent with the Constitution of this state or the United States.  [Citations.]  Personal jurisdiction over a nonresident defendant served with process outside the state satisfies constitutional due process requirements if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice."  (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 216-217 (*Doe*).)

8

Two forms of personal jurisdiction exist—general jurisdiction and specific jurisdiction. (*Doe, supra,* 177 Cal.App.4th at p. 217.) Only specific jurisdiction is at issue in this case. "[A] defendant may be subject to specific jurisdiction, meaning jurisdiction in an action arising out of or related to the defendant's contacts with the forum state. [Citations.] Specific jurisdiction depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged. [Citation.] [¶] A nonresident defendant is subject to specific personal jurisdiction only if (1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state; (2) the controversy arises out of or is related to the defendant's forum contacts; and (3) the exercise of jurisdiction would be fair and reasonable. [Citations.] 'These guidelines are not susceptible of mechanical application, and the jurisdictional rules are not clear-cut. Rather, a court must weigh the facts in each case to determine whether the defendant's contacts with the forum state are sufficient. [Citations.]' " (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167 (*HealthMarkets, Inc.*).)

3. *Application*

a. *Hall and The Clinton Group*

i. *The bases on which PCGH contends that the trial court may exercise specific jurisdiction over Hall and The Clinton Group*

PCGH contends that the trial court may exercise specific jurisdiction over Hall and The Clinton Group based on the following facts: Hall was present at the Napa Meeting at which the SCIP transaction was discussed; Hall was the president, chief executive officer, and director of The Clinton Group at the time he attended the Napa Meeting; Hall used

9

his e-mail address from The Clinton Group to engage in discussions with Moseley concerning the SCIP transaction after the Napa Meeting; and Hall signed two agreements related to the SCIP transaction.[10] PCGH also appears to suggest that Hall falsely signed an "Officer's Certificate," in which Hall stated that there were no undisclosed parties to the SCIP transaction.

ii.    *The trial court's findings*

In its order granting Hall and The Clinton Group's motion to quash, the trial court made numerous findings, including the following:

- In the past 20 years, Hall has worked continuously in New York and has resided in New York or New Jersey;

- The Clinton Group is a Delaware corporation with its principal place of business in New York;

- "[T]here is no evidence that Hall was advised of the 5% agreement at the Napa [M]eeting";

- "There is no allegation or evidence of any intent to harm California resident PCGH";

- "[There is an] absence of any evidence that any matter discussed during such alleged meeting [in California] was designed to cause harm to California resident PCGH";

- "PCGH fails to set for[th] any evidence establishing that the 'focal point of the tort and the brunt of the harm' was felt in California";

---

10    PCGH also suggests in its brief that Hall "solicit[ed] California investment funds." However, PCGH provides no citation to the record to support this assertion. The contention is thus forfeited. (See, e.g., *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1305 ["We are not required to comb the record to locate evidence substantiating plaintiff's recitation. [Citation]  His failure to comply with these requirements forfeits this claim"].)

- "[T]here is no evidence that the Officer's Certificates were false or that Hall and [The] Clinton Group intended that signing of the Officer's Certificates would cause harm to PCGH."

PCGH does not mention any of these findings in its opening brief, and does not attempt to demonstrate that there is not substantial evidence to support them.[11]

### iii. *The trial court properly determined that it lacked personal jurisdiction over Hall and The Clinton Group*

We consider first whether PCGH presented evidence "demonstrating facts justifying the exercise of jurisdiction" over Hall. (*Vons, supra,* 14 Cal.4th at p. 449.)

Distilled to its essence, PCGH's claim is that Hall's execution of the SCIP agreements and Hall's preexecution discussions related to those agreements support the trial court's exercise of specific personal jurisdiction over Hall.[12] PCGH's theory is that by establishing "interstate contractual obligations," Hall established contacts with California sufficient to support the trial court's exercise of personal jurisdiction over him.

---

[11] In its *reply* brief, PCGH contends that there is a lack of substantial evidence to support the trial court's finding that there was no evidence that Hall had knowledge of the five percent agreement at the Napa Meeting. Because PCGH offers no reason as to why it failed to raise this contention in its opening brief, the claim is forfeited. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' . . . "].)

[12] To the extent that PCGH intends to argue that Hall's purported signing of false Officer's Certificates supports the exercise of personal jurisdiction over Hall, that claim fails. Hall submitted evidence that the Officer's Certificates were *not* false, the trial court made an express factual finding that there was *no* evidence that the certificates were false, and PCGH fails to raise any challenge to this factual finding on appeal. (See, e.g., *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 46-47 [" ' "the trial court's resolution of any factual disputes arising from the evidence is conclusive" ' "].)

11

Even assuming the relevance of case law governing the exercise of personal jurisdiction in *breach of contract* cases to PCGH's *tort* causes of action in this case, we are not persuaded.[13]

In *Burger King v. Rudzewicz* (1985) 471 U.S. 462 (*Burger King*), in discussing the application of the purposeful availment prong to specific personal jurisdiction in breach of contract actions, the United States Supreme Court stated that it had long ago rejected the notion that "an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum." (*Id*. at p. 478.) The *Burger King* court emphasized the need for a " 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [Citation.]" (*Id.* at p. 479.) Thus, in considering whether a contract can constitute a sufficient minimum contact for purposes of personal jurisdiction, the *Burger King* court instructed courts to consider factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." (*Ibid*.)

In this case, a consideration of the factors outlined by the *Burger King* court supports the conclusion that the trial court lacked specific jurisdiction over Hall. While

---

13    Hall and The Clinton Group argue that the issue of whether the trial court may exercise personal jurisdiction over PCGH's tort claims against Hall and The Clinton Group should not be governed by "the standard used in breach of contract actions." Hall and The Clinton Group contend, in the alternative, that an application of the factors used to determine personal jurisdiction in the context of a breach of contract does not support the trial court's exercise of personal jurisdiction over them.

PCGH presented evidence that some preexecution activities occurred in California, these activities were limited to Hall's attendance at a single preexecution meeting in California during which the SCIP transaction was discussed, and Hall's receipt of a few follow-up e-mails in which the transaction was discussed.[14] PCGH presented no evidence that Hall had engaged in a prior course of dealing with PCGH in California (or elsewhere), nor any evidence that Hall engaged in any activity related to PCGH in California (or elsewhere) after executing the agreements. Nor did PCGH present any evidence that the location of the execution of the SCIP agreements, the place of performance of the SCIP agreements, or the terms of the SCIP agreements, supported an exercise of jurisdiction over Hall. In sum, the record supports the trial court's determination that Hall's contacts with California for purposes of the SCIP transaction were limited in nature, and do not support the conclusion that the trial court may exercise personal jurisdiction over Hall. (See *Burger King, supra,* 471 U.S. at p. 475 [noting that the " 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"].)

The cases that PCGH cites in its brief with respect to this issue are clearly distinguishable. For example, in *Safe-Lab, Inc. v. Weinberger* (1987) 193 Cal.App.3d 1050, this court concluded that California courts had specific jurisdiction over a Nevada defendant, Weinberger, who entered into a contract to serve as a marketing representative for a California corporation. The contract was negotiated in California, was to be

---

14    Hall did not send any of the e-mails.

governed by California law, and required that Weinberger come to California on a monthly basis to provide reports to the corporation. (*Id.* at p. 1054.) In addition, approximately five percent of Weinberger's marketing efforts were directed at California markets. (*Id.* at p. 1053.) Weinberger's contacts with California were materially different from Hall's.

Similarly unavailing are other cases that PCGH cites, in which defendants had far greater contact with California than Hall had in this case. (See, e.g., *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 974 (*Anglo Irish Bank Corp., PLC*) ["by soliciting investors in California through the personal visits of their employees and others, Petitioners established sufficient contacts with California to justify the exercise of specific personal jurisdiction in this state"]; *Virtualmagic Asia, Inc., supra,* 99 Cal.App.4th at pp. 242-243 ["the undisputed facts show that [defendant] negotiated and contracted with [a California based company (CWC)], took directions from and communicated with CWC within and outside California to perform that contract, held meetings with CWC in California concerning performance of the contract, delivered the work in progress and final work to California, and was paid by CWC"]; *Checker Motors Corp. v. Superior Court* (1993) 13 Cal.App.4th 1007, 1018 ["there was a veritable 'latticework' of contacts linking [out-of-state partnership] and the State of California" including "many calls and other communications to California during the negotiations," "execution in California of the legal documents," and "[a] continuing stream of payments from [partnership] to California"].)

14

Further, PCGH's claims against Hall are not *breach of contract* claims that arise directly from the SCIP agreements. Rather, PCGH's claims are *tort* claims that are ancillary to the SCIP agreements. In considering whether California courts may exercise specific personal jurisdiction over a defendant with respect to a tort claim, California courts have examined whether the defendant committed tortious conduct *within* the state (see *Anglo Irish Bank Corp., PLC, supra,* 165 Cal.App.4th at p. 980 ["The commission of a tortious act within the forum state ordinarily justifies the exercise of specific personal jurisdiction in an action arising from the tortious act"]), or committed acts *outside* the state that have a sufficient "effect" in California when analyzed under the so-called "effects test." (*HealthMarkets, Inc. supra,* 171 Cal.App.4th at p. 1173.) "[T]he effects test requires a showing that the defendant purposefully directed its activities at California with the knowledge that its conduct would cause harm in this state." (*Ibid*.) We consider each of these potential bases for jurisdiction in turn.

With respect to whether there is evidence that Hall committed a tort while physically present in California, the only act that PCGH alleges Hall performed in California is attending the Napa Meeting. However, the trial court expressly found, "[T]here is no evidence that Hall was advised of the 5% agreement at the Napa [M]eeting."[15] Given that the gravamen of all of PCGH's tort claims against Hall is his purported participation in an alleged "Illegal Kickback Scheme" based upon the alleged "5% agreement" that PCGH claims was discussed at the Napa Meeting, it is clear that

---

[15]    As noted previously, PCGH failed to challenge this factual finding in its opening brief.

there is no basis to conclude that the trial court may exercise personal jurisdiction over Hall based on his alleged commission of a tort in California. With respect to the effects test, Hall's conduct in relation to the SCIP transaction does not constitute evidence that Hall "purposefully directed [his] activities at California with the knowledge that [his] conduct would cause harm in this state." (*HealthMarkets, Inc., supra,* 171 Cal.App.4th at p. 1173.)

We also reject PCGH's contention that "California's interest in regulating hedge funds and investment activities by private equity firms" supports the trial court's exercise of personal jurisdiction over Hall under the "special regulation" doctrine. (See *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1761-1762 [" '[I]t is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing "effects in the state by an omission or act done elsewhere" whenever (a) the effects are of a nature "that the State treats as exceptional and subjects to special regulation" ' "].) The statutes that PCGH cites in support of its contention that this doctrine applies, including Corporations Code section 25000 et seq. (the Corporate Securities Law of 1968) and Business and Professions Code section 17200 et seq., are designed to prevent fraud in *California*. PCGH makes no argument that any such statutes have as their purpose the prevention of ancillary injuries that stem from alleged fraudulent conduct performed in another state.

In sum, we conclude that the trial court properly determined that Hall did not purposefully avail himself of California-conferred benefits or protections. "Because [Hall] has not purposefully availed [himself] of forum benefits, it is unnecessary to address the other prerequisites for the exercise of specific jurisdiction over [him]."

16

(*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1321.)[16] Accordingly, we conclude that the trial court properly determined that it lacked specific personal jurisdiction over Hall and properly granted his motion to quash.

The sole basis on which PCGH argues that the trial court could exercise jurisdiction over The Clinton Group is its contention that Hall was acting on behalf of The Clinton Group with respect to the SCIP transaction. In light of our conclusion that PCGH failed to present evidence justifying the exercise of jurisdiction over Hall, the same conclusion necessarily follows with respect to The Clinton Group.[17]

---

[16]     Although we need not definitively resolve the issue in light of our conclusion that PCGH failed to establish the purposeful availment prong of its specific personal jurisdiction claim, we question whether PCGH's claims bear "a substantial connection to [Hall's] forum contacts." (*Vons*, *supra*, 14 Cal.4th at p. 452.) The torts that PCGH alleges are not based primarily on Hall's actions that occurred in California *prior* to the execution of the SCIP agreements, but rather, on the execution of those agreements and actions taken by the New York Attorney General's office in the *wake* of their execution. For example, all of the claimed damages that PCGH references in its brief arise from the New York investigation. In addition, as noted above, the trial court expressly found that there was no evidence that Hall was apprised of the five percent agreement at the Napa [M]eeting. Thus, it is questionable whether PCGH can establish that its claims have a "substantial connection to [Hall's] *forum contacts*." (*Ibid.,* italics added; see also *ibid*. [noting relationship between purposeful availment and substantial connection prongs of specific jurisdiction analysis and stating, " '[A]s the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend' "].)

[17]     Although the trial court noted that the parties had presented conflicting evidence as to whether "[The] Clinton Group was involved in the SCIP," the court did not make a finding with respect to this issue. However, even assuming that The Clinton Group was involved in the SCIP deal, any such involvement did not constitute a sufficient basis upon which to exercise personal jurisdiction over The Clinton Group, for the reasons stated in the text.

17

b.       *Loglisci and Morris*

i.       *The bases on which PCGH contends that the trial court may exercise specific jurisdiction over Loglisci and Morris*

PCGH contends that Wissman's act in negotiating the SCIP transaction at the Napa Meeting and Wissman's acts in engaging in follow-up e-mail communications concerning the transaction may be attributed to Loglisci and Morris, and that these acts are sufficient to establish specific personal jurisdiction over both Loglisci and Morris. PCGH further contends that Loglisci signed one of the SCIP partnership agreements.

ii.       *The trial court's findings*

Although unmentioned in PCGH's brief on appeal, in its order granting Loglisci's motion to quash, the trial court made the following findings:

> "PCGH fails to submit any evidence that Loglisci had direct contact in California related to the alleged 'Illegal Kickback Scheme.' Instead, PCGH argues that Loglisci is subject to jurisdiction based on an agency theory, with Wissman acting as Loglisci's agent. . . . PCGH fails to submit evidence sufficient to establish that Wissman was acting as Loglisci's agent at the Napa [M]eeting and with respect to the alleged 'Illegal Kickback Scheme.' Wissman's testimony does not directly address this issue and fails to meet the applicable 'specific evidentiary fact' requirements in opposing a motion to quash. [Citation.] Similarly, the Declaration of Christopher Bower [PCGH's chief executive officer] as to PCGH's understanding that Wissman appeared at the Napa [M]eeting on his own behalf and on behalf of Morris and Loglisci does not meet the applicable evidentiary standards. PCGH fails to establish that Wissman was acting as Loglisci's agent so as to establish jurisdiction based on Wissman's actions in California."

In its order granting Morris's motion to quash, the trial court made a nearly identical finding with respect to Morris, stating, "PCGH fails to establish that Wissman

18

was acting as Morris'[s] agent so as to establish jurisdiction based on Wissman's actions in California."

      iii.  *The trial court's unchallenged factual findings that Wissman did not act as Loglisci's or Morris's agent are fatal to PCGH's personal jurisdiction contentions*

"The existence of an agency relationship is a factual question for the trier of fact whose determination must be affirmed on appeal if supported by substantial evidence." (*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 965.)  On appeal, PCGH does not raise any substantial evidence challenge to the trial court's factual findings that PCGH failed to establish that Wissman was acting as either Loglisci's or Morris's agent so as to permit the trial court to exercise personal jurisdiction over Loglisci and Morris based on Wissman's actions.

Rather than challenging these findings, PCGH contends, "The question of whether Wissman was formally acting as Loglisci and Morris'[s] 'agent' has *no bearing* on the question of whether Loglisci and Morris'[s] contact with the forum state was sufficient to give rise to specific jurisdiction."  (Italics added; citing *Anglo Irish Bank Corp., PLC., supra*, 165 Cal.App.4th at p. 974.)[18]  PCGH's appellate contention is in direct conflict with the position that it advocated in the trial court.  In that court, PCGH argued,

---

18  The *Anglo Irish Bank Corp., PLC* court acknowledged that some courts have applied the law of agency in considering whether to exercise specific jurisdiction over nonresident defendants.  (*Anglo Irish Bank Corp., PLC*, *supra*, 165 Cal.App.4th at p. 983.)  However, the *Anglo Irish Bank Corp., PLC* court stated, "In our view, reliance on state substantive law of agency . . . to determine the constitutional limits of specific personal jurisdiction is unnecessary and is an imprecise substitute for the appropriate jurisdictional question."  (*Ibid*.)

19

"Wissman acted as Loglisci's agent with respect to the illegal kickback scheme and *therefore* Wissman's contacts can be attributed to Loglisci." (Italics added.) PCGH made an identical argument with respect to Wissman acting as Morris's agent in its opposition to Morris's motion to quash.

It is thus clear that PCGH urged one position in the trial court, received an unfavorable factual finding from that court, failed to mention or address the trial court's factual finding in this court, and then attempted to avoid the import of the trial court's factual finding by urging a theory on appeal that is directly contrary to one it urged the trial court to apply in that court. Under these circumstances, the "theory of trial" doctrine prevents PCGH from gaining review of its newly minted theory in this court. (See *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873 [" ' "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party." [Citation.] The principles of "theory of the trial" apply to motions [citation] . . . . It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal.' "].)

In light of PCGH's failure to properly challenge the trial court's finding that Wissman's actions may not be attributed to Loglisci or Morris for purposes of determining whether the trial court may exercise personal jurisdiction over Loglisci or Morris, it is clear that PCGH's claims with respect to both defendants must fail. The only evidence of direct action on Loglisci's part that PCGH identifies is his signing of one of

20

the SCIP agreements.[19]  For the reasons stated in connection with our consideration of whether the trial court could exercise personal jurisdiction over Hall based on his signing of the SCIP agreements, this action does not provide a sufficient basis to conclude that Loglisci purposefully availed himself of California-conferred benefits or protections. (See pt. III.A.3.a., *ante*.)  As for Morris, PCGH fails to identify *any* direct action taken by him on which the trial court could exercise personal jurisdiction.[20]

We conclude that PCGH failed to present sufficient evidence that either Loglisci or Morris purposefully availed himself of the benefits of conducting activities in California, as is required in order to support the trial court's exercise of specific personal jurisdiction.[21]  Accordingly, we further conclude the trial court properly determined that it lacked specific personal jurisdiction over Loglisci and Morris and that the court properly granted Loglisci's and Morris's motions to quash.

---

[19]    It is clear that the trial court may not exercise personal jurisdiction over Loglisci or Morris based on the acts of their alleged coconspirators.  "Where conspiracy is alleged, an exercise of personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant, and acts of an 'alleged coconspirator—cannot be imputed to establish jurisdiction over the third party defendant. [Citation.]' "  (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1118.)

[20]    PCGH tacitly acknowledges that the record contains no evidence of *direct* action taken by Morris by arguing, "[T]he only way that [Morris's] interest could be negotiated and protected was through the conduct of other individuals."  (Italics omitted.)

[21]    We also reject PCGH's contention that the "special regulation" doctrine may serve as a basis for exercise of personal jurisdiction over Loglisci or Morris, for the reasons stated in the text with respect to Hall.  (See pt. III.A.3.a., *ante*.)

B.      *The trial court did not abuse its discretion in denying PCGH's request to continue the hearing on the motions to quash to permit PCGH to conduct additional discovery*

PCGH contends that the trial court erred in denying its request for a continuance to permit it to conduct additional discovery. We review the trial court's ruling for an abuse of discretion. (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487 [stating that decision whether to grant a continuance to enable a party to conduct discovery in an attempt to obtain evidence that would support the trial court's exercise of personal jurisdiction "lies in the discretion of the trial court, whose ruling will not be disturbed in the absence of manifest abuse"].)

1.      *Factual and procedural background*

In opposing each of respondents' motions to quash, PCGH requested, in the alternative, a continuance of the hearing on the motions to permit PCGH to conduct additional discovery pertaining to the personal jurisdiction issues. PCGH presented identical arguments in each opposition, including contending that the New York Attorney General's investigation had hampered its discovery efforts and that the granting of a continuance would permit it to take the depositions of Hall, Morris, Loglisci and the person most knowledgeable at The Clinton Group.

In each of the trial court's rulings granting respondents' motions to quash, the court denied PCGH's request for a continuance. In its ruling granting Hall and The Clinton Group's motion to quash, the trial court stated that PCGH had failed to address why it had been unable to conduct discovery as to Hall and The Clinton Group. In its rulings granting Loglisci's and Morris's motions to quash, the trial court did state that PCGH had

22

presented evidence that "it was initially prevented from taking certain depositions and conducting certain discovery." However, the trial court also stated that, notwithstanding this initial delay, PCGH "had sufficient time to conduct discovery and take necessary depositions." In addition, with respect to each ruling, the trial court noted that PCGH had failed to demonstrate that additional discovery was likely to lead to the production of evidence establishing that the trial court could exercise personal jurisdiction over respondents.

### 2. *Application*

PCGH fails to address the trial court's reasons for denying its request for a continuance. Accordingly, we conclude that PCGH has not demonstrated that the trial court abused its discretion in denying PCGH's request for a continuance of the hearing of the motions to quash.

### IV.

### DISPOSITION

The orders granting the motions to quash are affirmed. PCGH is to bear costs on appeal.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

23