Filed 9/11/15  Boster Assocs. v. Dynamic Finance Corp. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| BOSTER ASSOCIATES LIMITED,<br><br>       Plaintiff, Cross-defendant and Appellant,<br><br>       v.<br><br>DYNAMIC FINANCE CORPORATION,<br><br>       Defendant, Cross-complainant and Appellant;<br><br>VIVIEN CHEN,<br><br>       Cross-defendant and Respondent. | B252609 c/w B254451<br><br>(Los Angeles County<br>Super. Ct. No. BC488552) |

APPEALS from orders of the Superior Court of Los Angeles County.  Richard L. Fruin, Judge.  Affirmed in part, reversed in part and remanded.

Mayer Brown, John Nadolenco, Donald M. Falk, Christopher P. Murphy and Barrett Schreiner for Plaintiff, Cross-defendant and Appellant.

Miller Barondess, Louis R. Miller, A. Sasha Frid and Mira Hashmall; Gibson, Dunn & Crutcher, Theodore B. Olson, Julian W. Poon, Timothy Loose and Michael Holecek for Defendant, Cross-complainant and Appellant.

Zaccaro Morgan, Thomas A. Zaccaro, Nicolas Morgan and Peter T. Brejcha; Paul Hastings, Eleanor K. Mercado and Elizabeth Mueller for Cross-defendant and Respondent.

This consolidated appeal concerns the denial of a Code of Civil Procedure section 425.16[1] special motion to strike a cross-complaint filed by Dynamic Finance Corporation (DFC) against Boster Associates Limited (Boster) and Vivien Chen (Vivien),[2] and the granting of a motion by Vivien to quash service of summons for lack of personal jurisdiction.  We affirm the order granting the motion to quash.  We reverse the order denying the anti-SLAPP motion and remand the matter to the trial court to determine whether DFC has demonstrated a probability of prevailing on the merits of its cross-claims against Boster.

## BACKGROUND

**Parties**

Boster is a British Virgin Islands corporation and a wholly owned subsidiary of Sai Wo Enterprises Limited (Sai Wo), a Hong Kong corporation that was wholly owned by Chen Din-Hwa (Chen) until his death in 2012.  DFC is a California corporation and a wholly owned subsidiary of Dynamic Holding Corporation (DHC).  DFC and DHC were also owned or controlled by Chen until 2003.

Boster, DFC, and DHC were three of the many companies owned or controlled by Chen, who also owned and controlled the Nan Fung Group (Nan Fung Group), a privately held business with interests in shipping, property holding and development, investments, and financial services.

Chen's two daughters are Vivien and Angela Sabella Chen (Angela).  Angela is the President of DHC and has owned or controlled DHC and DFC since 2003.  Vivien is the Chairman, Managing Director, and Executive Director of Nan Fung International Holdings Ltd. (Nan Fung).  Nan Fung and its subsidiaries comprise the Nan Fung Group.  Angela and Vivien both reside in Hong Kong.

---

[1]     All further statutory references are to the Code of Civil Procedure, unless otherwise stated.  A special motion to strike is also referred as an anti-SLAPP motion.

[2]     Because some of the individuals in this case have the same surnames, we refer to them by their first names to avoid confusion.

**The Boster/DFC loan participation agreement**

In July 2000, DFC made an $18 million real property investment in Temecula, California by lending $18 million to Rancho California Country Club LLC (Rancho California). Two weeks later, DFC and Boster entered into a loan participation agreement (participation agreement) pursuant to which Boster purchased a 99 percent interest in the $18 million Rancho California loan.

The Rancho California investment was structured as a loan transaction, and the loan participation agreement between Boster and DFC was entered into, in order to take advantage of the "portfolio loan" exception contained in section 881(c) of the Internal Revenue Code (26 USC § 881). The portfolio loan exception allows a foreign lender to avoid taxes on interest from loans funded by the lender to a U.S. borrower. At the time the Rancho California loan and the participation agreement were made, Chen owned and controlled both DFC and Boster.

Rancho California eventually proved to be an unsuccessful investment. The developer could not obtain the proper entitlements, the amount outstanding on the $18 million loan exceeded the value of the property, and Rancho California defaulted on the loan in 2004.

**Boster's action for breach of the participation agreement**

In July 2012, Boster sued DFC for breach of the participation agreement. Boster alleged that DFC had failed to provide an accounting as required by the participation agreement, released substantial collateral for the Rancho California loan without Boster's consent, and failed to make payments owed to Boster under the participation agreement.

**DFC's cross-action against Boster and Vivien**

After receiving an assignment of Angela's litigation claims, DFC filed a cross-complaint against Boster and Vivien, alleging causes of action for breach of fiduciary duty, constructive fraud, deceit, negligent misrepresentation, and promissory estoppel, based on Vivien's allegedly tortious conduct in seizing exclusive control of Nan Fung, engaging in self-dealing transactions, and breaching contractual and fiduciary duties owed to Angela by seeking to misappropriate assets that Chen had gifted to Angela. The

3

cross-complaint further alleged that Boster and Vivien were agents, alter egos, and co-conspirators of each other, and that Boster participated in or facilitated Vivien's attempt to misappropriate the assets gifted to Angela.

### Chen's principle of equality and gifts to Angela and Vivien

DFC alleges in its cross-complaint that Chen's succession plan for the Nan Fung Group and for his estate was to have Angela and Vivien jointly manage the Nan Fung Group and to divide his assets equally between his two daughters pursuant to a "principle of equality agreement." Both Angela and Vivien agreed to abide by this agreement, and a fiduciary relationship was thereby allegedly created among the parties, giving rise to duties of care and loyalty to one another.

Consistent with the principle of equality agreement, Chen gave each daughter equivalent gifts of HK$3.1 billion (approximately $400 million U.S. dollars) in December 2003. To Angela, Chen gifted through a trust the cash necessary to purchase DHC, the entity that held Chen's U.S. real property assets. To Vivien, Chen gifted non-U.S. property assets of equivalent value. Vivien agreed, orally and in writing, that Chen's division of assets between his daughters implemented his principle of equality. In a December 11, 2003 document, Vivien wrote: "'I agree with the principle of equality with regard to the above mentioned trust. The agreement between [Vivien] and [Angela] merely implements that principle. Therefore, [Angela] can obtain assets of equal value as the set-up of the trust is underway.'"

### Chen's illness and Vivien's alleged malfeasance

Chen was diagnosed with Alzheimer's disease in 1995. By 2006, his mental health had deteriorated significantly. As Chen's mental condition worsened, Vivien took control of Nan Fung and allegedly used the company to engage in self-serving transactions that benefitted her personally.

In 2008, Angela petitioned a court in Hong Kong to declare Chen to be a mentally incapacitated person and to appoint a conservator for Chen's assets. The Hong Kong court granted the petition and a conservator was appointed; however, the conservator never assumed any management control over Nan Fung and its affiliated companies, and

4

Vivien continued to control the Nan Fung Group's operations. In 2009, Vivien succeeded Chen as Chairman, Managing Director, and Executive Director of Nan Fung.

Chen died in June 2012. Thereafter, Vivien allegedly caused Boster to file the instant action to enforce the participation agreement as part of an alleged overall scheme to nullify Chen's gifts to Angela.[3]

The cross-complaint alleges that Boster is a shell corporation, with no offices, departments, or employees. Its only two directors are Nan Fung employees Patrick Yu, a supervisor in Nan Fung's information technology department, and Gladys Au, Vivien's former long-time secretary who now works in Nan Fung's personnel department.[4] The cross-complaint further alleges that Vivien exercises complete dominion, control, and decision-making authority over Boster, and that Boster is Vivien's agent and alter ego.

**Anti-SLAPP Motion**

Boster filed an anti-SLAPP motion on October 30, 2012, arguing that the claims asserted against it in DFC's cross-complaint arise solely out of the filing of Boster's action for breach of the participation agreement -- a constitutionally protected right of petition. On November 30, 2012, Vivien filed her own anti-SLAPP motion and joined in Boster's anti-SLAPP motion.

---

[3]  The cross-complaint also alleges that Chen gifted another U.S. property, Two Bear Ranch, to Angela. Two Bear Ranch was acquired through a portfolio loan transaction in which Angela executed a $30 million promissory note in favor of Rostack Investments, Inc. (Rostack), an entity formerly owned or controlled by Chen. Chen also gifted Angela approximately $2.8 million annually to pay the interest on the Rostack note. Vivien acknowledged and agreed that Chen gifted Two Bear Ranch to Angela in accordance with the principle of equality agreement. In violation of that agreement, Vivien, who now allegedly controls Rostack, caused Rostock to file a separate action to enforce the promissory note. The lawsuit between Rostack and Angela is the subject of a separate appeal.

[4]  During the course of the litigation, Au and Yu resigned as Boster's directors and were replaced by other Nan Fung executives.

DFC filed a motion for leave to conduct discovery in order to oppose the anti-SLAPP motion, and the trial court granted that request, allowing written discovery and depositions of Vivien and of Boster's current and former directors.

After discovery was concluded, DFC filed its opposition to the anti-SLAPP motion, arguing that the gravamen of its claims was based not on the filing of Boster's breach of contract action, but on Vivien's alleged breaches of the principle of equality agreement and fiduciary duties owed pursuant to that agreement. In support of its opposition, DFC submitted, among other evidence, declarations by DHC's former chief financial officer and by attorneys who helped structure the Rancho California loan transaction to qualify for the portfolio loan exemption. DFC also submitted Angela's declaration, documents evidencing the principle of equality agreement, and documents evidencing Vivien's agreement that Chen's gift of DHC and its assets to Angela were consistent with the principle of equality agreement.

The documentary evidence included (1) a January 2003 handwritten note by Vivien stating: "I promise that the amount I receive from father's estate will definitely not be more than what Angela Chen receives. I surely believe that father will distribute evenly"; (2) contemporaneous handwritten notes from a January 24, 2003 meeting attended by Chen, his wife, Angela, Vivien, and senior staff members at Nan Fung documenting a discussion that Chen's assets would be allocated in accordance with the principle of equality; (3) a handwritten table prepared by Vivien in July 2003 setting forth agreed-upon gifts by Chen to Vivien and Angela; (4) a "proposal form" used by Chen in his business to confirm transactions stating that "Chairman Chen will transfer the U.S. real estate property and the assets under the name of Dynamic Holdings Corporation into the irrevocable trust of [Angela] Chen and these assets will be deducted from the total assets that Chairman Chen has decided to give to [Angela] Chen, so that the assets that Chairman Chen will be giving to [Angela] Chen and [Vivien] Chen will be equal according to the principle of equality that [C]hairman Chen has decided on." In the same document, Vivien stated her agreement by writing: "I agree with the principle of equality with regard to the above mentioned trust. The agreement between [Vivien] and [Angela]

6

merely implements that principle. Therefore, [Vivien] can obtain assets of equal value as the set-up of the trust is underway."

Angela's declaration describes the structure and sequence of the Rancho California loan transaction, including losses incurred following Rancho California's 2004 default on the $18 million loan made by DFC. In her declaration, Angela states that Boster made no inquiries or demands concerning the participation agreement until after Chen was declared mentally incapacitated in November 2008. Angela further states that Chen would never have allowed Boster or any of the entities he controlled to sue DFC and thereby invalidate the gifts he had made to her. After Chen's death, control of his businesses and assets passed to the executors of his will. Vivien is one of the executors; Angela is not.

Angela's declaration states that while Chen was alive but suffering from advancing Alzheimer's disease, Vivien repeatedly asked Chen to sign documents approving complex transactions that he could not appreciate or understand, given his impaired mental state. Some of these transactions involved self-dealing and secret profiteering by Vivien, or diversion of corporate opportunities to companies owned or controlled by her.

DFC submitted deposition testimony by Grace Au and Patrick Yu, Boster's sole directors at the time instant action was commenced. Au and Yu both testified that they were appointed to Boster's board by Chen. Both confirmed that Boster has no employees, and that Boster's legal, accounting, and secretarial needs are met by Nan Fung employees. Au confirmed that Boster's sole business activity is the prosecution of its lawsuit against DFC.

DFC also submitted deposition testimony by Vivien stating that Au and Yu are employees of Nan Fung Development Limited, a company Vivien has controlled as chairperson since 2009. Vivien also testified that she has known Au for approximately 29 years, and that Au was her former secretary.

In reply to DFC's opposition, Boster submitted a declaration by Vivien stating that she does not serve as an officer, director, or employee of either Boster or Rostack; that

7

she possesses no decision-making authority over either of those companies; and that she did not authorize, direct, or ratify the filing of the instant action or the action by Rostack against Angela. Boster also submitted evidence that before commencing the instant action, its Hong Kong counsel corresponded with the attorney representing Chen's conservator. Chen's conservator's attorney responded, five days before Chen's death, that the conservator "is content to leave this matter in the hands of the management of Boster and its legal advisers (and consequently for the management of Boster to decide whether to commence proceedings against DFC)." After Chen's death, Boster's Hong Kong counsel also corresponded with the attorneys representing Chen's estate. The estate's attorneys responded as follows in a letter dated May 24, 2013: "The Executors have considered Boster's claims and, based on the information presently available, we confirm that the Executors are also content that Boster pursue its claim against DFC and to leave matters in the hands of Boster's directors, management and legal advisors."

The trial court denied Boster's anti-SLAPP motion, concluding that the claims asserted in DFC's cross-complaint do not arise from the filing of Boster's complaint, but are instead based upon "an underlying, long-standing and broader dispute between Angela Chen and Vivien Chen from which both Boster's complaint and DFC's cross-complaint arise."

The trial court found that "Boster is not and never was an independent actor" but rather an entity "organized and funded within Nan Fung to benefit DFC as another Nan Fung entity." The court further found that the loan participation agreement between Boster and DFC was not an arms-length transaction. Because the trial court concluded that DFC's cross-complaint did not come within the ambit of section 425.16, it did not address the merits of DFC's claims or its probability of prevailing on those claims.

**Motion to quash**

On November 19, 2012 (before filing the November 30, 2012 anti-SLAPP motion and joinder to Boster's anti-SLAPP motion), Vivien filed a motion to quash for lack of personal jurisdiction, or in the alternative, to stay or dismiss the action on the ground of forum non conveniens. At the same time, Vivien filed a demurrer to the cross-complaint.

8

In support of her motion to quash, Vivien submitted her own declaration in which she stated that she is a citizen and resident of Hong Kong and the chairman and managing director of Nan Fung. Vivien further stated in her declaration that Nan Fung and the Nan Fung Group have no offices or employees in California or the United States, and that Boster and Rostock are not subsidiaries of Nan Fung nor are they part of the Nan Fung Group. Vivien stated that she is not an officer, director, or employee of either Boster or Rostock, that she possesses no decision-making authority over either of those companies, and that she did not authorize, direct, or ratify the filing of the instant action by Boster or the action by Rostack against Angela. Vivien further stated that she conducts no business in California, either individually or in her capacity as an officer and director of the Nan Fung Group, that she owns no property or bank accounts in California, and holds no California professional licenses or certifications.

In response to Vivien's motion to quash, DFC filed an ex parte application for leave to conduct jurisdictional discovery. At the December 3, 2012 hearing on DFC's ex parte application, the trial court ordered the parties to submit briefs addressing the issue of whether Vivien's filing of an anti-SLAPP motion constituted a general appearance. The court continued the hearings on the motion for jurisdictional discovery and the motion to quash.

At a December 19, 2012 hearing, the trial court ruled that Vivien's filing of the anti-SLAPP motion did not constitute a general appearance.[5] The court subsequently granted DFC's motion to conduct discovery.

Following a December 16, 2013 hearing on the merits of Vivien's motion to quash, the trial court granted the motion on January 15, 2014. In doing so, the trial court found that there was no evidence to support DFC's allegation that Vivien controlled

---

[5] As the result of a clerical error, an order denying the motion to quash was erroneously posted on the Superior Court's website on December 21, 2012. The trial court explained at a January 3, 2013 hearing that the December 21, 2012 order was issued by mistake, and that a subsequent order issued on December 31, 2012, granting the motion to quash was the court's intended and final ruling on the matter. The trial court did not, as DFC contends, "inexplicably reverse itself" in ruling on the motion to quash.

9

Boster and Rostock, as her agents, to engage in wrongful conduct in California; that the evidence showed that Boster's action against DFC was initially approved by Chen's court appointed conservator and is now being prosecuted by the executors of Chen's estate; and that the gravamen of DFC's claims against Vivien arise not from Vivien's activities in California, but rather, from the purported breach of obligations under a "principle of equality" agreement made in Hong Kong among residents of Hong Kong.

The trial court concluded that California has little interest in adjudicating a dispute among Hong Kong residents regarding alleged tortious conduct carried out in Hong Kong concerning assets gifted to Angela in Hong Kong. In view of its ruling, the trial court did not address Vivien's alternative motion to stay or dismiss the action based on forum non conveniens.

**The instant appeal**

Boster appeals from the order denying its anti-SLAPP motion, and DFC appeals from the order granting Vivien's motion to quash. We granted DFC's motion to consolidate the two appeals.

**DISCUSSION**

**I. Anti-SLAPP Motion**

*A. Section 425.16*

Section 425.16 was enacted "to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315 (*Club Members*).) As relevant here, subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

10

Determining whether section 425.16 bars a given cause of action requires a two-step analysis.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)  First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech."  (§ 425.16, subd. (b)(1); *Navellier, supra*, at p. 88.)  "'A cause of action "arising from" [a] defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.'  [Citations.]  'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action.  [Citation.]"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).)  The scope of the statute is broad.  In authorizing the filing of a special motion to strike, the Legislature "expressly provided that section 425.16 should 'be construed broadly.'"  (*Club Members, supra*, 45 Cal.4th at p. 315.)

If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1); *Navellier, supra*, 29 Cal.4th at p. 88.)  In order to demonstrate a probability of prevailing, a party opposing a special motion to strike under section 425.16 ""'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  [Citation.]"  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741, fn. omitted.)

A trial court's order granting a special motion to strike under section 425.16 is reviewed de novo.  (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

### B.  DFC's claims against Boster arise from protected activity

Boster contends all of the claims asserted against it in the cross-complaint arise out of the filing of the breach of contract action -- protected petitioning activity under section 425.16.  Filing a lawsuit is an exercise of a party's constitutional right of petition.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 (*Chavez*).)  ""'[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking

11

administrative action.'" [Citations.]" (*Briggs, supra*, at p. 1115.) Thus, "a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike." (*Chavez, supra*, at p. 1087.)

To determine whether the causes of action asserted in DFC's cross-complaint arise from acts in furtherance of Boster's right of petition, we must "consider the pleadings, and supporting and opposing affidavits stating the facts on which the liability or defense is based." (§ 425.16, subd. (b)(2).) In doing so, we "examine the *principal thrust* or *gravamen*" of those causes of action to determine whether the anti-SLAPP statute applies. (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.) We assess the gravamen of DFC's claims by identifying "'[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) As our Supreme Court has explained, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability -- and whether that activity constitutes protected speech or petitioning." (*Navellier, supra*, 29 Cal.4th at p. 92.) A court considering an anti-SLAPP motion must therefore examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed. (*Id.* at pp. 92-93.) We apply these principles to each of the causes of action asserted against Boster.

DFC's constructive fraud cause of action is premised on Vivien's alleged breach of a fiduciary duty owed to Angela under the principle of equality agreement. The alleged breach consists of "seeking to go after Mr. Chen's HK$3.1 billion gift to Angela" and "seeking to enforce loan obligations in the Boster Participation Agreement." Boster's liability is premised on the following allegations: (1) "Boster had a confidential relationship with Angela as a result of Mr. Chen's ownership and control over Boster and DHC/DFC"; (2) "Boster, through directors Patrick Yu and Gladys Au, knew about this relationship of trust and confidence between Boster and DHC/DFC"; and (3) "Among other things, Boster facilitated Vivien's challenge to Mr. Chen's gift of DHC and DFC to Angela by seeking to enforce the Participation Agreement."

12

Neither the cross-complaint nor the evidence submitted in opposition to the anti-SLAPP motion specifies what "other things" Boster did to facilitate Vivien's alleged malfeasance. The only activity by Boster that DFC alleges as the basis for imposing constructive fraud liability is "seeking to enforce the Participation Agreement," i.e., filing the instant breach of contract action -- protected petitioning activity under section 425.16.

DFC's causes of action for deceit and negligent misrepresentation are similarly premised on allegations that Vivien falsely represented to Angela that she would comply with the principle of equality agreement. Although the cross-complaint alleges that Boster "knowingly and intentionally induced, participated in and provided substantial assistance to Vivien's" deceit and misrepresentations, "as described herein," there is no description or allegation of any activity by Boster, nor was there evidence of any activity by Boster except seeking to enforce the participation agreement by filing the instant lawsuit -- protected activity under the anti-SLAPP statute.

DFC's cause of action for promissory estoppel is based on allegations that Vivien made false promises to Angela that she would honor the principle of equality agreement and that "Boster knowingly and intentionally induced, participated in and provided substantial assistance to Vivien's false promises to Angela, as described herein." The cross-complaint does not allege when or how Boster induced, participated in or provided assistance to Vivien's false promises, nor was there evidence of such inducement, participation, or assistance. The only specific fact upon which Boster's alleged liability is based is enforcement of the participation agreement -- i.e., filing the instant lawsuit.

Because all of the causes of action against Boster are based on protected petitioning activity -- the filing of a breach of contract action to enforce the participation agreement -- the trial court erred by denying Boster's anti-SLAPP motion. In so doing, the trial court improperly conflated Boster's protected activity with unprotected alleged misconduct by Vivien. "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308, fn. omitted.)

13

Although the cross-complaint alleges generally that Boster was Vivien's agent and that each of the cross-defendants was "the agent, employer, partner, joint venture, alter ego, affiliate and/or co-conspirator of the other," DFC presented no specific facts or evidence to support the existence of any such relationship. The trial court did not find that Boster's separate corporate identity should be disregarded or that Boster and Vivien were agents, partners, co-conspirators, or alter egos of one another, nor was there any evidence to support such findings. (See *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [two general requirements for alter ego liability are "'a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist'" and "'if the acts are treated as those of the corporation alone, an inequitable result will follow'"].) There was evidence, on the other hand, that Vivien is not a director, officer, shareholder, or employee of Boster, and that Boster is owned by Sai Wo, an entity owned by Chen's estate. There was no valid legal basis for attributing Vivien's alleged actions to Boster. The trial court accordingly erred by considering Vivien's activities, rather than Boster's, when determining the gravamen of the claims asserted against Boster and by denying Boster's anti-SLAPP motion on that basis. (*Navellier, supra*, 29 Cal.4th at p. 92.)

Because Boster made the requisite threshold showing that the causes of action asserted against it arise from protected activity, the trial court must determine whether DFC has demonstrated a probability of prevailing on those causes of action. We remand the matter to the trial court for that determination.

## II. Motion to Quash

DFC contends Vivien made a general appearance by filing a joinder to Boster's anti-SLAPP motion and that the trial court misconstrued section 418.10, subdivision (e) in granting Vivien's motion to quash. DFC further contends the trial court erred by concluding that Vivien lacks the requisite minimum contacts for the court to exercise personal jurisdiction over her in California.

14

*A. Vivien's joinder in the anti-SLAPP motion did not constitute a general appearance*

"It has long been the rule in California that 'a party waives any objection to the court's exercise of personal jurisdiction when the party makes a general appearance in the action.' [Citations.]" (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 419 (*Air Machine* ).) Section 1014 states that a defendant generally appears in an action "when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant." (§ 1014.) In addition, a defendant who invokes the authority of the court on his or her behalf or who affirmatively seeks relief available only if the court has jurisdiction over the defendant has also made a general appearance. (*Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246, 250.)

Section 418.10 provides an important exception to the foregoing jurisdictional principles. As relevant here, section 418.10, subdivision (e) allows a defendant or cross-defendant to file a motion to quash "and simultaneously answer, demur, or move to strike the complaint or cross-complaint" without being deemed to have appeared in the action. (§ 418.10, subd. (e).) Subdivision (e)(1) of section 418.10 provides in relevant part: "Notwithstanding Section 1014, no act by a party who makes a motion under this section, including filing an answer, demurrer, or motion to strike constitutes an appearance, unless the court denies the motion made under this section."

**1. An anti-SLAPP motion is a permissible act under section 418.10, subdivision (e)**

DFC argues that section 418.10, subdivision (e) allows the filing of only three enumerated pleadings, and that the trial court improperly expanded the list of permissible pleadings to include an anti-SLAPP motion. That argument ignores the plain language of the statute, which is broadly inclusive: "*no act . . . including* filing an answer, demurrer, or motion to strike constitutes an appearance." (§ 418.10, subd. (e)(1), italics added.)

15

DFC's narrow interpretation of the statute is also inconsistent with applicable case authority. Courts have construed the term "act" in subdivision (e)(1) of section 418.10 broadly to mean *any* act, and not just the filing of an answer, demurrer, or motion to strike. (*Air Machine, supra*, 186 Cal.App.4th at p. 427; *Roy v. Superior Court* (2005) 127 Cal.App.4th 337, 345.) In *Air Machine*, the court concluded that the term "act" in subdivision (e)(1) of section 418.10 should be construed broadly to mean "*any* act, and is not limited to an 'act' that is defensive in nature." (*Air Machine*, at p. 427.) The court in *Air Machine* based its conclusion on several factors, including the statutory language and legislative history and intent. The court noted that "section 418.10, subdivision (e)(1) specifically references section 1014, which is a *non-exhaustive* statutory list of acts constituting a general appearance" and that "[it] would make little sense to limit subdivision (e)(1) to an answer, demurrer or motion to strike . . . when the issue of whether a party engaged in an 'act' that amounts to an appearance under section 1014 is 'fact specific.'" (*Air Machine*, at p. 426.) The court in *Air Machine* further noted that the history of section 418.10 reflected the Legislature's intent to eliminate "'traps for the unwary'" and that ignoring the word "including" in subdivision (e)(1) and requiring parties to litigate the derivative issue of whether, for purposes of the statutory safe harbor, a party engaged in acts or activities that were "defensive" in nature, would frustrate the legislative intent. (*Air Machine*, at p. 426.) Finally, the court stated that its decision did "not rewrite California law regarding general and special appearances" because under subdivision (e)(3) of section 418.10, a party would still be deemed to have "generally appeared" in an action if it failed to file a motion under subdivision (a) before or simultaneously with an act that would otherwise constitute a general appearance. (*Air Machine*, at p. 426.)

We find the foregoing analysis to be sound and apply it here. The filing of an anti-SLAPP motion, when made simultaneously with or after a motion to quash, does not constitute a general appearance. (§ 418.10, subd. (e); *Air Machine, supra*, 186 Cal.App.4th at p. 427.)

## 2. Section 418.10, subdivision (e) protects acts taken after filing a motion to quash

DFC contends section 418.10, subdivision (e) requires a defendant to *simultaneously* file an enumerated pleading with a motion to quash in order to avail itself of the statutory safe harbor. It argues that Vivien's anti-SLAPP motion and joinder in Boster's anti-SLAPP motion, filed after her motion to quash, was a general appearance resulting in a waiver of her jurisdictional objections.

DFC's argument was expressly rejected by the court in *Air Machine*. In that case, the defendant filed a motion to quash under section 418.10, subdivision (a) and subsequently served a statutory settlement offer under section 998. The trial court treated the section 998 offer as a general appearance, and the appellate court reversed, noting as follows: "Subdivision (e) of section 418.10 states that a party may make a motion under subdivision (a) of that statute and *simultaneously* move to answer, demur or move to strike. . . . [T]he protection afforded a party under subdivision (e) of section 418.10 also applies to situations such as the instant case, where a party first files a motion under subdivision (a) of that statute." (*Air Machine, supra*, 186 Cal.App.4th at p. 417, fn. 3.) The court in *Air Machine* reasoned that although the statutory language states that a defendant may file a motion to quash "and *simultaneously* answer, demur or move to strike" (§ 418.10, subd. (e), italics added), the legislative history to subdivision (e) shows that a party will not be deemed to have made a general appearance if a motion to quash is filed *before* filing an answer, demur, or motion to strike: "['Senate Bill No. 1325] would provide that a defendant "may" move to quash service concurrently with a substantive response to the complaint without being penalized for failing to move to quash first, but does not <u>require</u> a concurrent filing. Under this bill, a defendant still could opt to challenge jurisdiction with a motion to quash <u>prior</u> to answering, demurring to, or moving to strike the complaint.']; Assem. Com. on Judiciary Analysis of Sen. Bill No. 1325 (2001-2002 Reg. Sess.) as amended Apr. 9, 2002, p. 4 [same].)" (*Air Machine, supra*, 186 Cal.App.4th at pp. 421-422.) We find the court's reasoning in *Air Machine* to be persuasive and apply it here. Vivien's joinder in Boster's anti-SLAPP motion, filed after

17

the filing of a motion to quash under section 418.10, subdivision (a), did not constitute a general appearance resulting in a waiver of her objections to the trial court's exercise of personal jurisdiction over her.  (*Id.* at pp. 427-428.)

DFC argues that Vivien submitted to the court's jurisdiction by litigating the merits of the anti-SLAPP motion.  It cites *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429 (*JT's Frames*) in support of its position.  That case, however, is distinguishable.  The defendant in *JT's Frames* chose to litigate the merits of the action by litigating the merits of a motion for summary judgment *after* its motion to quash for lack of personal jurisdiction had been denied but while a writ petition seeking review of the order denying the motion to quash was pending.  (*Id.* at pp. 435-436.)  The court in *JT's Frames* noted that while under subdivision (e) of section 418.10, "[a] party may answer, demur, move to strike and perform other actions related to the merits without fear of accidentally waiving a potentially meritorious attack on personal jurisdiction," the statute did not change the essential rule that a defendant submits to the court's jurisdiction by participating in the action in a manner that recognizes the court's jurisdiction.  (*JT's Frames*, at p. 441.)  Subdivision (e), the court stated, "merely delays the effect of such actions until the motion to quash is denied or, if the defendant seeks writ review, until proceedings on the writ have concluded.  Once the motion is denied or writ proceedings have concluded, the actions undertaken by the defendant while the motion or writ was pending that recognized the court's jurisdiction will be 'deemed' to constitute a general appearance."  (*JT's Frames*, at p. 441.)  The court in *JT's Frames* concluded that by participating fully in the merits of the litigation while its writ petition was pending, the defendant in that case had submitted itself to the jurisdiction of the court.  (*Ibid.*)

In the instant case, Vivien's motion to quash was not denied, but was still pending at the time the anti-SLAPP motions were being litigated.  Her motion to quash was subsequently granted, and the filing and litigating of those motions accordingly were never deemed to constitute a general appearance.

18

## B.  Merits of Vivien's motion to quash

"When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of proof by a preponderance of the evidence to demonstrate the defendant has sufficient minimum contacts with the forum state to justify jurisdiction.  [Citations.]  The plaintiff must 'present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts."  [Citation.]'  [Citation.]"  (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090.)  "Under the minimum contacts test, 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.'  [Citations.]"  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).)  To the extent this determination depends on issues of fact, it will not be disturbed on appeal if supported by substantial evidence.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

Personal jurisdiction may be general or specific.  General jurisdiction exists when the defendant has such pervasive contacts with the forum state that they take the place of physical presence in the forum as the basis for jurisdiction.  (*Vons, supra*, 14 Cal.4th at p. 446.)  "Specific jurisdiction exists when, though the defendant lacks such pervasive forum contacts that he may be treated as present for all purposes, it is nonetheless proper to subject him to forum state's jurisdiction in connection with a particular controversy."  (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2009) 179 Cal.App.4th 314, 327 (*Epic Communications*).)  DFC does not challenge the trial court's ruling that it has no general jurisdiction over Vivien.  We are therefore concerned only with the sufficiency of Vivien's contacts to establish specific jurisdiction.

"'A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum'" [citations]; and (3) "'the assertion of personal jurisdiction would

19

comport with "fair play and substantial justice""'" [citation].' [Citation.]" (*Epic Communications, supra*, 179 Cal.App.4th at p. 327.)

When a nonresident defendant challenges personal jurisdiction, the plaintiff must prove, by a preponderance of the evidence, the factual bases justifying the court's exercise of jurisdiction. (*Pavlovich, supra*, 29 Cal.4th at p. 273.) To sustain this burden, the plaintiff must do more than allege jurisdictional acts; the plaintiff must provide affidavits and other competent evidence of jurisdictional facts. (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429.) If the plaintiff meets its burden, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. (*Pavlovich*, at p. 273.)

The trial court concluded there was insufficient evidence of minimum contacts between Vivien and the State of California to establish specific jurisdiction. Substantial evidence supports this conclusion.

### 1. Purposeful availment

To establish purposeful availment, a plaintiff must show that "'the defendant purposefully and voluntarily directs his activities toward the forum.'" (*Pavlovich, supra*, 29 Cal.4th at p. 269.) This requirement "'ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts [citations], or of the "unilateral activity of another party or a third person." [Citations.]' [Citation.]" (*Ibid.*)

DFC argues that it presented the following evidence that Vivien purposefully directed her activities toward California: in 2003 and 2005, Vivien made false promises to abide by Chen's principle of equality and not to oppose Chen's gift of the Two Bear Ranch to Angela, and Vivien caused Boster and Rostack to file lawsuits against DFC and Angela in California.

The trial court found that Vivien's "purported breach of obligations under the 'Principle of Equality,' an agreement allegedly made in Hong Kong in 2003 among residents of Hong Kong" was an insufficient basis upon which to exercise personal jurisdiction over Vivien. The court concluded that "California has little interest in

20

adjudicating" a dispute among Hong Kong residents involving "allege[d] tortious conduct carried out in Hong Kong, regarding disputed assets that were gifted to ANGELA CHEN in Hong Kong, though in some part consisting of real property interests located here." DFC fails to show that the trial court's findings and conclusions are factually or legally unsupported.

The evidence showed that the "principle of equality" agreement was made in Hong Kong, and that it concerned the division of Chen's assets, some which included California real estate allegedly gifted to Angela. Vivien's alleged promises confirming Chen's gifts of California real property assets to Angela were also made in Hong Kong. That Vivien's alleged promises were directed to Angela as well as Chen and in part concerned real property assets located in California, is insufficient to establish personal jurisdiction over Vivien. Most courts, including the California Supreme Court, have held that "merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish personal jurisdiction" based on the "effects" of out-of-state conduct in California. (*Pavlovich, supra*, 29 Cal.4th at pp. 270-271, 278.) Rather, the plaintiff must show that the defendant's intentional conduct was "*expressly aimed at or targeting* the forum state" in addition to the defendant's knowledge that his or her intentional conduct would cause harm in the forum. (*Id.* at pp. 271, 278.) The trial court did not err by concluding that Vivien's alleged promises confirming Chen's principle of equality was not a sufficient basis on which to exercise personal jurisdiction over her.

The trial court rejected DFC's argument that Vivien directed Boster and Rostack, as her agents, to file lawsuits in California against Angela and DFC based on evidence that Vivien neither owns nor controls either of those entities. Deposition testimony by Vivien and by former Boster and Rostack directors Patrick Yu and Gladys Au confirmed that Vivien does not own or control Boster or Rostack and that she did not direct those entities to file the California actions. The evidence showed that Boster and Rostack are not part of the Nan Fung Group but are owned by Sai Wo, an entity wholly owned by Chen during his lifetime and now part of Chen's estate. Although Vivien is one of the

four executors of Chen's estate, the evidence showed that Vivien has no control over Boster's activities and has not participated in any of the executors' decisions pertaining to the Rostack lawsuit against Angela.

In a letter dated April 16, 2013, attorneys for the executors informed Angela's lawyers that "Vivien has not participated in making any decisions pertaining to the Rostack Lawsuit and has abided by the decisions pertaining to the Rostack Lawsuit made by the other three Executors." The letter further stated: "The Executors have satisfied themselves that Rostack has a meritorious claim in the Rostack Lawsuit, had have been advised that they would be in breach of their duty were they to instruct the management of Rostack to discontinue the proceedings." With regard to Angela's claim that the Rostack lawsuit contravenes Chen's intention to gift the Two Bear Ranch property to her, the executors stated: "Mr. Chen could have given effect to his alleged intention to gift the sum concerned to Angela by either procuring Rostack during his lifetime to release the claim or by making some appropriate provision for this purpose in his will, but he did neither. [¶] [U]nder Hong Kong law, an intention to make a gift is, if that gift is not perfected, unenforceable, and the Executors have been advised that they have no power to perfect on Mr. Chen's behalf a gift which for whatever reason Mr. Chen did not perfect in his lifetime himself or make provision for its perfection in his will. We understand the position is the same under California law. Hence, evidence concerning Mr. Chen's intentions has no bearing on the Executors' consideration of the matter." Substantial evidence supports the trial court's findings that Vivien did not purposefully avail herself of forum benefits by controlling or directing Boster or Rostack to file lawsuits in California.

## 2. Alleged legal error

### a. The trial court did not require DFC to prove the existence of an agency relationship

DFC contends the trial court's ruling is based on the erroneous legal theory that DFC was required to prove the existence of an agency relationship between Vivien, on the one hand, and Boster and Rostack, on the other, in order to impute Boster and

22

Rostack's jurisdictional contacts to Vivien. To the extent the trial court's ruling refers to an agency relationship, it does so simply to address an argument DFC itself advanced in opposing the motion to quash -- that Vivien "directed Boster and Rostack, as her agents, to engage in wrongful conduct in California." The trial court did not, in any event, require DFC to prove an agency relationship. Rather, the trial court concluded that DFC failed to prove purposeful availment because there was no evidence that Vivien controlled Boster or Rostack or that she directed them to file suit in California.

DFC cites *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462 (*Burger King*) for the principle that forum contacts "'carried on in behalf of'" a nonresident defendant can be attributed to the defendant, and that the trial court was required to impute Boster's and Rostack's forum contacts to Vivien regardless of whether she controlled or directed their actions. (*Id.* at p. 479, fn. 22.) The principle articulated by the Supreme Court in *Burger King* is nowhere near as broad. That principle, in its entirety states: "We have previously noted that when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, [citation], at least where he is a 'primary [participant]' in the enterprise and has acted purposefully in directing those activities, [citation]." (*Ibid.*) The same principle was applied by the trial court in the instant case when it specifically found that Vivien does not participate in the management or control of Boster or Rostack, and that she did not direct their forum-related activities.

DFC's reliance on *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, *Empire Steel Corp. v. Superior Court of Los Angeles County* (1961) 56 Cal.2d 823, and *HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160 as support for its argument for imputing Boster's and Rostack's forum contacts to Vivien is similarly misplaced. The courts in those cases imputed contacts to a nonresident corporation because the corporation purposefully caused or directed the forum-related activities. (*Empire Steel, supra*, at p. 831 [specific personal jurisdiction over foreign parent corporation established based on parent's "manipulation" and control of its California subsidiary]; *HealthMarkets, supra*, at p. 1169 ["parent company purposefully avails itself of forum benefits through the activities of its subsidiary . . . if and only if the

23

parent deliberately directs the subsidiary's activities in, or having a substantial connection with, the forum state"]; see also *Anglo Irish Bank, supra*, at p. 983 [proper jurisdictional question is "whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts"].) In the instant case, the trial court specifically found that Vivien does not control Boster or Rostack, and that she did not direct their forum-related activities. As discussed, substantial evidence supports those findings.

### b. *The trial court did not improperly raise the burden of proof*

DFC next contends the trial court improperly raised DFC's burden of proof by requiring DFC to disprove alternate theories as to who was directing Boster's and Rostack's forum-related activities. DFC argues that the trial court ignored evidence that Boster and Rostack were shell entities controlled by Vivien and applied its own alternative "thesis" that Boster's and Rostack's actions are being prosecuted at the direction of the executors of Chen's estate.

The record shows that the trial court's ruling was based on the evidence presented, not on an alternative legal "thesis" not propounded by the parties. In its written order, the trial court discusses this evidence in some detail, including a letter from the executors of Chen's estate and a declaration by Chen's court-appointed conservator stating that the Rostack and Boster actions were undertaken with their approval. DFC ignores this substantial evidence and cites other evidence that contradicts the trial court's factual findings. Under the applicable standard of review, however, we must view the evidence in the light most favorable to the prevailing party, and resolve neither credibility issues nor evidentiary conflicts. (*Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 589.)

The record also shows that the trial court considered the evidence presented, not for the purpose of improperly increasing DFC's burden of proof, but to address a "purposeful availment" theory that DFC itself advanced: "DFC's 'purposeful availment' argument asserts that Mr. Chen would not have authorized Boster's (and Rostack's) actions against entities that he gifted to his elder daughter because that would violate the

24

Principle of Equality Agreement . . . and that, therefore, VIVIEN CHEN . . . must be directing these two Los Angeles actions to deprive ANGELA CHEN of her rights under that Agreement. This thesis presumes that no person other than VIVIEN CHEN would challenge the decisions that ANGELA CHEN belies are implied under the Principle of Equality Agreement. That is not the case."

### c. *The trial court did not apply an incorrect legal standard*

DFC contends the trial court applied the wrong legal standard when it concluded that the "gravamen" of DFC's cross-action against Vivien does not "arise from" forum-related activities but from breach of the principle of equality agreement. Citing *Vons, supra*, 14 Cal.4th 434, DFC argues that the proper legal standard for the exercise of specific jurisdiction is not whether a claim "arise[s] directly from the defendant's forum contacts" but rather, whether it "bears a substantial connection to the nonresident's forum contacts." (*Id.* at p. 452.) DFC maintains there is no requirement that the "gravamen" of a cause of action arise from forum contacts, and that "the trial court's legally erroneous test set the jurisdictional bar far too high."

The trial court's factual determination that the gravamen of the claims asserted against Vivien do not arise from forum-related activities did not result from the court's application of an incorrect legal standard. In the sentence immediately preceding that factual determination, the trial court articulated the correct standard as follows: "With respect to the requirement that DFC's causes of action against VIVIEN CHEN arise from her activities in California, DFC fails to show that its claims arise from VIVIEN CHEN'S forum-related activities." That statement is consistent with the second prong of the applicable three-part test for a court's exercise of personal jurisdiction -- whether the controversy is related to or "arises out of" the defendant's contacts with the forum. (*Epic Communications, supra*, 179 Cal.App.4th at p. 327.)

DFC has failed to establish any legal error.

### 3. Jurisdiction would be unreasonable

DFC claims the trial court improperly shifted the burden of proof as to whether exercising personal jurisdiction over Vivien in California would be unreasonable when

the court stated that "DFC fail[ed] to meet its burden to show . . . that the exercise of jurisdiction over VIVEN CHEN by this Court would be unreasonable." Under the applicable legal standard, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, the factual basis justifying the exercise of personal jurisdiction over the defendant. If the plaintiff does so, the burden then shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable. (*Pavlovich, supra*, 29 Cal.4th at p 273.) The trial court's statement regarding the burden of proving that the exercise of personal jurisdiction over Vivien would be unreasonable was therefore incorrect. The error, if any, however, was harmless, because the trial court found that DFC had not met its burden of proving any factual basis justifying the exercise of personal jurisdiction over Vivien. The burden accordingly never shifted to Vivien to show that the exercise of jurisdiction would be unreasonable. (*Ibid.*)

## DISPOSITION

The order granting Vivien's motion to quash is affirmed. The order denying Boster's anti-SLAPP motion is reversed, and the matter is remanded to the trial court to determine whether DFC can establish a probability of prevailing on its claims. The parties will bear their respective costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

26